**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TIMMY KINNER,

        Plaintiff,

v.                                                                  Case No. 3:24-cv-1294-WWB-MCR

L.T. CARTWRIGHT, et al.,

        Defendants.

_____

## ORDER

THIS CAUSE is before the Court on Defendants' Amended Motion to Dismiss (Doc. 29) and Plaintiff's pro se Response in opposition.[1] (Doc. 33). For the reasons set forth below, Defendants' Amended Motion will be granted.

## I.      BACKGROUND

Plaintiff, an inmate of the Florida Department of Corrections ("**FDOC**"), proceeds pro se and *in forma pauperis* on an Amended Complaint for Violation of Civil Rights under 42 U.S.C. § 1983. (Doc. 21). Plaintiff's Amended Complaint proceeds against Defendants Cartwright, Wilson, and Williams based on an incident that occurred on September 13, 2024, at Reception and Medical Center ("**RMC**").[2] (*See generally id.*). In his Amended Complaint, which the Court construes liberally, Plaintiff raises a First Amendment retaliation claim and an Eighth Amendment excessive force claim based on

---

[1] Plaintiff filed a "Rule 56 Motion," which the Court construes as Plaintiff's Response in opposition to Defendants' Amended Motion. (Doc. 33).

[2] The claims against Defendants Warden Lamb, Secretary of FDOC, and Assistant Warden Smith were dismissed without prejudice. (Doc. 22).

the totality of the September 13, 2024 incident.[3]  (*Id.* at 6).  According to Plaintiff, while housed in the k-dorm at RMC, Defendant Cartwright approached Plaintiff's cell yelling and making threats, including telling Plaintiff that he (Defendant Cartwright) "wanted [Plaintiff's] blood and brains on [the] floor."  (*Id.* at 6).  Plaintiff was then forced into handcuffs by Defendants Cartwright, Wilson, and Williams, and they began escorting him out of his dorm.  (*Id.*).  As Defendants Williams and Wilson walked Plaintiff to the exit door, they slammed Plaintiff to the ground, pinning him there; both began repeatedly punching him in the face and ribs with their hands and "keys."  (*Id.*).  Before being taken to medical, Defendant Cartwright returned to Plaintiff's dorm to "taunt" him and "kick" him in the face and head, causing Plaintiff's face to become "busted open and bloody."  (*Id.*).

Subsequently, Plaintiff was taken to medical where he was advised that the attack was "retaliation for what [he had] done." (*Id.*).  Plaintiff alleges that prior to this September 13, 2024 incident, he had filed grievances against Defendants and had spoken to the Warden about feeling unsafe.  (*Id.*).  As a result of the September 13, 2024 incident, Plaintiff alleges that he suffered injuries to his arm, ribs, face, and head, as well as emotional and mental anguish, and pain and suffering.  (*Id.*).  As relief, Plaintiff requests

---

[3] While Plaintiff's Amended Complaint also summarily states "failure [to] protect," "equal protection," "discrimination," "freedom of religious practice," and "other possible violations," Plaintiff makes no factual allegations supporting these conclusory statements. (Doc. 21 at 3, 6).  This is so even though the Court entered an order directing Plaintiff to file an Amended Complaint, which outlined the various standards and legal elements that Plaintiff must allege in order to state plausible claims consistent with his initial conclusory statements. (Doc. 14).  Despite that, his Amended Complaint focuses exclusively on his First Amendment retaliation and Eighth Amendment excessive force claims.  (Doc. 21 at 6).  Thus, to the extent Plaintiff's Amended Complaint raises claims unrelated to his First Amendment retaliation and Eighth Amendment excessive force claims, the Court dismisses those claims without prejudice for failure to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).

"one million dollars" in damages, "punitive or otherwise," as well as declaratory relief. (*Id.*).

## II.      LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).  Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## III.     DISCUSSION

Defendants move to dismiss the Amended Complaint, primarily arguing that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("**PLRA**").  (Doc. 29 at 4–9).  Alternatively, Defendants argue that

(1) they are immune from suit in their official capacity for monetary damages; (2) Plaintiff failed to disclose his litigation history; and (3) Plaintiff's claim for declaratory relief is moot. (*Id.* at 9–13).  Plaintiff filed a "Rule 56 Motion," which, as previously noted, the Court construes as Plaintiff's Response in opposition to Defendants' Amended Motion.  (Doc. 33).  As will be discussed below, because Plaintiff did not file a grievance appeal addressing either his First Amendment retaliation claim or Eighth Amendment excessive force claim, his Amended Complaint is dismissed for failure to exhaust his administrative remedies.

### A.  Exhaustion Under the PLRA

The PLRA requires an inmate wishing to challenge prison conditions to exhaust all available administrative remedies before pursuing judicial remedies.  *See* 42 U.S.C. § 1997e(a).  For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–23 (11th Cir. 2007)). An inmate need not affirmatively plead exhaustion, *Jones v. Bock*, 549 U.S. 199, 216 (2007), but exhaustion of available administrative remedies is mandatory under the PLRA, *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008).  Because exhaustion is mandatory, district courts "may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." *Ross v. Blake*, 578 U.S. 632, 648 (2016). Rather, "[t]he only limit to [the PLRA's] mandate is the one baked into its text:  An inmate need exhaust only such administrative remedies as are 'available.'" *Id.*

Whether an inmate exhausted his available administrative remedies before pursuing an action in federal court is a matter in abatement and properly raised in a motion

4

to dismiss.  *Bryant*, 530 F.3d at 1374–75.  The burden is on the defendant to show a failure to exhaust.  *Jones*, 549 U.S. at 212.  The Eleventh Circuit has articulated a two-step process district courts must employ when examining whether an inmate exhausted his administrative remedies, explained as follows:

> In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust.  541 F.3d at 1082.  First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true.  The court should dismiss if the facts as stated by the prisoner show a failure to exhaust.  *Id.*  Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.  *Id.* at 1082–83; *see also id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015).

The PLRA demands "proper exhaustion," which means an inmate must comply with the relevant agency's "critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Those "critical procedural rules" are set by state law.  *Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015).  Generally, to properly exhaust administrative remedies, a Florida inmate must complete a three-step process set forth in the Florida Administrative Code ("**FAC**") by filing an informal grievance, then a formal grievance, and then an appeal to the Office of the Secretary of the FDOC.  *See* Fla. Admin. Code rr. 33-103.001, 33-103.005, 33-103.006, 33-103.007.  Unless grieving certain matters, an inmate must follow these steps "in order and within the time limits set forth in [the FAC], and must either receive a response or wait a certain period of time before proceeding to the next step" if

no response is received. *Pavao v. Sims*, 679 F. App'x 819, 824 (11th Cir. 2017).[4]  An inmate may bypass the first step of the process or the first and second steps when grieving certain enumerated matters.   *See* Fla. Admin. Code rr. 33-103.005(1), 33-103.006(3), 33-103.007(3).

Here, Defendants argue that Plaintiff failed to properly exhaust his administrative remedies for all the claims raised in his Amended Complaint.[5]  (Doc. 29 at 4–9).  More specifically, Defendants argue that Plaintiff failed to properly exhaust his allegations regarding Defendants' alleged use of excessive force against Plaintiff on September 13, 2024, in retaliation for his prior grievances and complaints to the Warden about being unsafe.  (*Id.*).  In support of their exhaustion argument, Defendants aver that between September 13, 2024, and December 10, 2024, Plaintiff filed numerous grievances at the informal, formal, and appeal levels, but none specifically addressed the September 13, 2024 incident as he now does in his Amended Complaint.  (*Id.* at 8–9).

At the informal level, Plaintiff filed thirty-two grievances, and at the formal level, Plaintiff filed twenty-two grievances.  (*Id.*).  Defendants attach as exhibits Plaintiff's informal and formal grievance logs and a Declaration of Jeffrey McClellan, the Assistant Warden of Program.  (*See* Doc. 29-1).  Defendants also attach as exhibits copies of two formal grievances and their corresponding denials.  (*See* Doc. 29-2).  Defendants argue that although these two formal grievances reference Defendant Cartwright and his alleged

---

[4] Any unpublished decisions cited in this Order are deemed persuasive authority on the relevant point of law.  *See McNamara v. GEICO*, 30 F.4th 1055, 1061 (11th Cir. 2022).

[5] As previously noted, the only adequately pleaded claims in Plaintiff's Amended Complaint are his First Amendment retaliation and Eighth Amendment excessive force claims, so the Court's exhaustion analysis will focus only on those claims.

use of excessive force against Plaintiff, neither are sufficient to establish proper exhaustion of the specific claims he brings now (First Amendment retaliation claim and Eighth Amendment excessive force claim).  (Doc. 29 at 8–9).  And, Defendants assert, even if these two formal grievances are construed liberally to include Plaintiff's retaliation and excessive force claims, Plaintiff nonetheless failed to exhaust his additional grievance options under § 33-103, FAC, following FDOC's denials.  (*Id.*).

A review of the first attached formal grievance shows that on September 25, 2024, Plaintiff alleged the following complaint:

> On 9/14/24, D.A. Jackson refused [to see] me [for] lef[t] rib area injuries after Lt. Cartwright battered me on 9/13/2024 sayin[g]: "he was seen yesterday" which had nothing [to] do [with] injury other than fact [that] pain had increased.  Now, I'm still hurting and being denied proper treatment.  [They] injured lef[t] arm and it was already injured.  Now, [they] won't even re-new front cuff pass.

(Doc. 29-2 at 2 (formal grievance #2409-209-183)).  The Warden denied the first formal grievance, advising Plaintiff as follows:

> Your formal grievance has been received, reviewed, and responded to.
>
> Review of record indicates that you were seen in the ER at RMC on 9/14/2024.  Your complaint at that time was pain to the left lower rib cage.  You were assessed and an x-ray was ordered for you which was completed on 9/19/2024.  Should you experience problems, sick call is available so that you may present your concerns to your health care staff.
>
> You are being treated in accordance with DC policy and procedure.
>
> Your grievance is hereby denied.
>
> You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form and providing attachments as required by 33-103.007, and forwarding your complaint to the Bureau of Policy Management and Inmate Appeals, 501 South Calhoun St. Tallahassee, FL 32399.

(Doc. 29-2 at 1).

7

The second attached formal grievance is one that Plaintiff sent to the Warden on September 30, 2024, that reads as follows:

Lt. Cartwright not only threatened and battered me during excessive use of force but he also was involved in DR hearing.  So, obviously I'd be found guilty even though A/V-11 sho[w] [that] [they] lied about how and why I was attacked.  Wilson was instructed by Cartwright to "put my brains on the floor."  So, [they] lied on me and got to make my time worse on paper.

(Doc. 29-2 at 4 (formal grievance #2410-209-002)).  The Warden denied the second formal grievance, advising Plaintiff as follows:

Your request for administrative remedy has been evaluated concerning DR Log #209-241247.  You have failed to demonstrate a violation has occurred in the processing of this report.  Per Chapter 33-601.306 Disciplinary Team and Hearing Officer states in part, a person shall not serve as the hearing officer or as a member of the disciplinary team, or participate in the deliberations when they are: (a) A witness or the person who wrote the charge (Lt. Cartwright did not write the charge, reporting Wilson did); (b) The investigating officer (Lt. Cartwright was not the investigating officer; Investigator Harvey was); (c) The person charged with review of the results of the disciplinary hearing (Lt. Cartwright is not the reviewing authority, the Warden or Assistant Warden has that responsibility[)].  You have not provided evidence to substantiate your allegation that the Reporting Officer furnished false information in the statement of facts.  As the totality of circumstances, evidence and information presented clearly indicate that you committed this infraction, your attempts to circumvent the statement of facts as they are written are futile.  The statement of facts supports the charge as is required per rule. Officer Wilson advised his statement is true and accurate as written.  No evidence has been detected in not following mandates within Chapter 33.

You were afforded the opportunity to participate during the investigation of this charge, to call witness and evidence in accordance with rule.  All witness statements and evidence were gathered and included in the disciplinary report.  The disciplinary hearing team advised the disciplinary hearing was held in accordance with policy and procedure and you were afforded a fair and impartial hearing, you have not furnished proof to indicate otherwise.  The Disciplinary hearing team found you guilty based "in part" on all statements, including the eyewitness charging officer's statement, and evidence provided.  You have failed to provide evidence, reason, information or documentation that would warrant the consideration of overturning this disciplinary charge.  This DR has been written, investigated and processed in accordance with policy and procedure.

8

> Based on this information, your grievance is denied.  You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form and providing attachments as required by 33.103.007(3)(a) and (b) and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.
>
> Note: The use of force referenced within this formal grievance have been previously documented and reported and rest at the discretion of the OIG.

(Doc. 29-2 at 3).[6]

Additionally, at the appellate level, Plaintiff filed ten appeals, and Defendants attach as an exhibit a Declaration of Lawanda Sanders-Williams, a custodian of records for grievance appeals, which establishes that none of Plaintiff's appeals between September 13, 2024, and December 10, 2024, mention Defendants or the alleged September 13, 2024 incident.  (*See* Doc. 29-3 at 1–3).

In Plaintiff's Response, he asserts that the grievance process is "just a way to attract more negative, harmful effects" within Florida's prison system.  (Doc. 33 at 1). Plaintiff requests that this Court "e-file" all his "case info, docket, etc." in the District Court of Idaho and Eleventh Circuit Court of Appeals, because "due to issues at the prison [he] is unable" and "[s]taff interference hinders [his] attempts."  (*Id.* at 3).

Importantly, Plaintiff does not assert that he filed any additional relevant grievances or appeals.  Nor does he argue that the two formal grievances attached to Defendants' Amended Motion are not accurate copies of those he did file.  Moreover, while Plaintiff asserts that "[s]taff interference hinder[ed] [his] attempts," this appears to be in the context

---

[6] Defendants also attach FDOC's Disciplinary Report Hearing Information, which addresses the September 13, 2024 incident.  (Doc. 29-2 at 5).  Formal grievance #2410-209-002 appears to be directed at the process and findings of the disciplinary hearing. (Doc. 29-2 at 4).

of his request for the Court to supply him with his "case info, docket, etc," not within the context of the grievance process being unavailable to him.[7] (*Id.*). Accordingly, because there are no disputed issues of fact, this Court resolves the exhaustion question at step one of the *Turner* test. 541 F.3d at 1082.

Initially, the evidentiary materials appear to indicate that Plaintiff never filed an informal grievance addressing the September 13, 2024 incident and alleging that Defendants used excessive force on him or that it was done in retaliation for filing grievances and speaking to the Warden about his safety. (Doc. 29-1 at 1–2). Additionally, of Plaintiff's thirty-two informal grievances, only two were approved, but neither addressed the September 13, 2024 incident. (*Id.*). But even assuming that Plaintiff did file an informal grievance addressing his First Amendment retaliation claim and Eighth Amendment excessive force claim, as the Court finds below, he did not properly proceed to the next levels of the grievance process.

Beginning with his First Amendment retaliation claim, while Plaintiff alleges in his Amended Complaint that he was advised by medical staff that Defendants' use of excessive force against him on September 13, 2024, was in "retaliation for what [he had] done," i.e., having filed unspecified grievances and spoken to the Warden about feeling

---

[7] Additionally, the Declaration of Jeffrey McClellan states that, after review of the available records, "it has been determined that there was no hindrance or impediment to [Plaintiff's] utilization of the grievance procedure at any level" and that "[a]ll grievances were responded to and returned to him per Rule 33-103.001." (Doc. 29-1 at 6). This is substantiated by the informal and formal grievance logs, as well as the Declaration of Lawanda Sanders-Williams, which collectively show that Plaintiff filed numerous grievances at the informal, formal, and appellate levels during the relevant timeframe. (Doc. 29-1 at 1-4; Doc. 29-3 at 1). Thus, to the extent Plaintiff asserts that the grievance process was unavailable to him, *see Ross*, 578 U.S. at 643–44, the Court rejects such argument.

unsafe, the two formal grievances make no mention of this allegation.  (Doc. 21 at 6; Doc 29-2 at 2, 4).  Although both formal grievances reference Defendant Cartwright's alleged use of excessive force, the allegations were made in a context separate and distinct from a retaliation claim.  For instance, in the first formal grievance (#2409-209-183), Plaintiff complained of having been denied medical treatment on September 14, 2024, after Defendant Cartwright battered him on September 13, 2024.  (Doc. 29-2 at 2).  And in the second formal grievance (#2410-209-002), Plaintiff complained that Defendant Cartwright, who had used excessive force on him, was "involved in the DR hearing," demonstrating Plaintiff's apparent disagreement with the process and outcome of a disciplinary hearing and report that addressed the September 13, 2024, incident.  (*Id.* at 4).

Nothing in either formal grievance comes close to an allegation that Defendants' use of excessive force against Plaintiff on September 13, 2024, was in retaliation for what he had previously done.  The allegations in these two formal grievances would not have alerted the institution that Plaintiff was alleging a retaliation claim against Defendants. *See Tate v. Andres*, No. 2:18-cv-822, 2022 WL 1104016, at *8 (E.D. Cal. Apr. 13, 2022) ("Plaintiff failed to properly exhaust his retaliation claim because he did not include allegations of retaliation in his initial grievance [alleging excessive force] and did not submit a separate grievance on that issue.").  But in any event, even if the Court could somehow liberally construe these two formal grievances as having alleged a First Amendment retaliation claim against Defendants, Plaintiff did not file an appeal following FDOC's responses, which were both denied.  The Declaration of Lawanda Sanders-Williams, a custodian of records for grievance appeals, establishes that none of the ten

11

appeals filed by Plaintiff between September 13, 2024, and December 10, 2024, mention Defendants or the alleged September 13, 2024 incident.  (Doc. 29-3 at 1).  Thus, the Court finds that Plaintiff's First Amendment retaliation claim is unexhausted.

As to Plaintiff's Eighth Amendment excessive force claim, the complaints he made in the two formal grievances are, admittedly, a closer call.  (Doc. 29-2 at 2, 4).  As noted, both formal grievances reference Defendant Cartwright's use of excessive force, albeit in a different context.  (*Id.*).  But again, even if the Court were to find that the allegations in these two formal grievances included a claim of excessive force against Defendants, Plaintiff still failed to appeal following the denial of both formal grievances. (Doc. 29-3 at 1).  Thus, the Court finds that Plaintiff's Eighth Amendment excessive force claim is unexhausted.

For the reasons stated, this Court finds Defendants have carried their burden to demonstrate that Plaintiff did not exhaust his available administrative remedies relating to his First Amendment retaliation or Eighth Amendment excessive force claims before bringing this action and, as such, the claims are dismissed under 42 U.S.C. § 1997e(a).[8]

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Amended Motion to Dismiss (Doc. 29) is **GRANTED** to the extent described herein.

2. Plaintiff's Amended Complaint (Doc. 21) is **DISMISSED without prejudice**.

3. The Clerk shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

---

[8] Finding Defendants' Amended Motion should be granted on exhaustion, the Court will not address Defendants' other arguments.

12

**DONE AND ORDERED** at Jacksonville, Florida, on May 19, 2026.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

CC-ORL
C:    Timmy Kinner, #F91538
       Counsel of Record

13